ORIGINAL
FILED
IN CLERK'S OFFICE
DEC 4 2005
P.M.
TIME A.M.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
VICTOR RENE CAMACHO,

          Plaintiff,

  -against-

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
------------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 04-CV-2006 (FB)

*Appearances:*
*For the Plaintiff:*
VICTOR RENE CAMACHO, *pro se*
75-03 164th Street, 1st Floor
Fresh Meadows, NY 11366

*For the Defendant:*
ROSLYNN R. MAUSKOPF, ESQ.
United States Attorney
Eastern District of New York
By: Steven Michael Warshawsky, Esq.
Assistant United States Attorney
147 Pierrepont Street
Brooklyn, NY 11201

**BLOCK, Senior District Judge:**

       Plaintiff, Victor Rene Camacho ("Camacho"), proceeding *pro se*, seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI"). The Commissioner moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Because the Administrative Law Judge ("ALJ") applied the correct legal standards and based his findings on substantial evidence, the Commissioner's decision is affirmed.

I.

       The following facts are taken from the Administrative Record ("A.R."):

       On January 22, 2002, Camacho filed an application for SSI. He alleged that he was HIV-positive and suffered from "headaches, [diarrhea], night sweats [and] body

aches." A.R. at 50. He further alleged that he worked in a box factory, but that in December 1998, headaches and fatigue caused him to stop working; he has not worked since December 1998.

On March 21, 2002, the Commissioner denied Camacho's application at the initial level, finding that "[t]he evidence we now have does not show that your condition is disabling." A.R. at 22. The application was also denied because Camacho missed two appointments for "the medical examination we asked you to have at our expense," *id.*; Camacho denies having received notice of these appointments.

On May 2, 2002, Camacho requested a hearing before an ALJ; that hearing took place on December 4, 2003. The medical evidence presented at the hearing consisted of Camacho's medical records and a follow-up report from his treating physician, Dr. Maurice Policar ("Policar").[1] The medical records indicate that, although Camacho was diagnosed as HIV-positive in 1995, he has not been hospitalized or suffered any opportunistic infections. They also indicate that Camacho exhibited signs of medial epicondylitis ("golfer's elbow") in his right elbow, and that he complained to his mental-health social worker about migraines.

In his report, Policar confirmed that Camacho "is HIV+ but is basically asymptomatic." A.R. at 152. With respect to Camacho's elbow pain, Policar reported that "that was a transient tendonitis syndrome that has resolved." *Id.* Policar's report does not

---

[1] The record also reflects that the ALJ received a report from a state-agency medical consultant; however, a copy of the report does not appear in the Administrative Record. According to the ALJ, the report was consistent with the other medical evidence; Camacho does not argue otherwise. Nevertheless, in an abundance of caution, the Court will not rely on this report in reviewing the ALJ's decision.

indicate that Camacho suffered from migraines and concludes by noting that "he has no physical impairment that would keep him from working." *Id.*

In addition to the medical evidence, the ALJ took testimony from Camacho, who appeared *pro se* at the hearing. Camacho testified that he had been laid off from his job at the box factory because "the boss didn't like me missing days." *Id.* at 161. He further testified that his elbow pain was due to "abnormal bones," that he suffers from migraines, and that he takes no medication for his HIV. *Id.* at 164-165. Finally, he testified that he takes care of things around the house, can walk "a half a mile or a mile" without difficulty, has no problems standing or sitting, and can lift fifty pounds "if [he has] to," although he "wouldn't want to." *Id.* at 166-67.

The ALJ rendered his decision on December 23, 2003, making the following findings:

1. The claimant has not engaged in substantial gainful activity since [January 22, 2002].[2]

2. The medical evidence establishes that the claimant is HIV+, an impairment which is severe, but which does not meet or equal the criteria of any of the impairments [listed in the Commissioner's regulations as giving rise to a presumption of disability].

3. The claimant's statements concerning his impairments and their impact on his ability to work are not entirely credible in light of the claimant's own description of his activities and life style, the medical history and reports

---

[2]As previously noted, Camacho has not engaged in substantial gainful activity since December 1998. For purposes of SSI eligibility, however, the relevant inquiry is whether the claimant has engaged in substantial gainful activity since applying for benefits, in this case on January 22, 2002. *See* 20 C.F.R. § 416.920(b).

3

of treating and examining practitioners, and the hearing testimony.

4. The claimant retains the residual functional capacity to lift and carry up to 50 pounds occasionally and up to 25 pounds on a regular basis. He can stand, walk, and sit for up to six hours each, with regular breaks, in an eight hour work day and can attend to work tasks on a sustained basis.

5. In his past work, as generally performed in the national economy, the claimant was not required to perform tasks precluded by his medically determinable impairment.

6. The claimant's impairments do not prevent him from performing his past relevant work.

7. Based on an exertional capacity for medium, light, and sedentary work, and the claimant's age, educational background, and work experience, [the Commissioner's Medical-Vocational Guidelines] would direct a conclusion of "not disabled."

8. The claimant has not been under a disability, as defined in the Social Security Act, at any time through the date of this decision.

A.R. at 18-19. Based on these findings, the ALJ concluded that Camacho was not eligible for SSI.

On January 22, 2004, Camacho sought review of the ALJ's decision with the Commissioner's Appeals Council. On April 22, 2004, the Appeals Council denied the request for review, thereby rendering final the Commissioner's decision to deny benefits. Camacho now asks this Court to review the Commissioner's final decision.

## II.

"In reviewing a final decision of the Commissioner, a district court must

4

determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). The former determination requires the Court to ask, *inter alia*, whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Secretary of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (citation and internal quotation marks omitted). The latter determination requires the Court to ask whether the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)) (internal quotation marks omitted).

An ALJ must evaluate a disability claim in accordance with the well-established, five-step process:

> At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity[.]"
>
> At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]"
>
> At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies[.]
>
> If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled[.]

> If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (citing 20 C.F.R. § 416.920(b-f) (now 20 C.F.R. § 416.920(b-g))); *see also Jasinski v. Barnhart*, 341 F.3d 182, 183-84 (2d Cir. 2003).

Here, the ALJ completed steps one through four of the required analysis by finding (1) that Camacho had not engaged in substantial gainful activity since January 22, 2002; (2) that his HIV-positive status constituted a severe impairment; (3) that the impairment was not among those presumed to be disabling; and (4) that, despite the impairment, he could still perform his previous work. Although not required to do so, the ALJ then went on to step five, finding that even if Camacho could not perform his previous work, the Commissioner's Medical-Vocational Guidelines (also known as "the Grids") would direct a finding of "not disabled." *See Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999) ("In the ordinary case, the Commissioner meets [her] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids).").

Camacho does not directly challenge any of those findings, which, in any event, are amply supported by the record. Instead, he submits (1) that, in addition to being HIV-positive, he suffers from migraines; (2) that, although his HIV infection is currently asymptomatic, his condition is worsening; and (3) that he has developed an allergic reaction of unknown origin.[3] The Court construes Camacho's submissions as arguing that

---

[3]Camacho also disputes certain facts contained in the Administrative Record: (1) that he "missed appointments for [a consultative examination]" A.R. at 74; (2) that he

these additional medical conditions call into question the ALJ's conclusion that he is not disabled. *See Burgos v. Hopkins*, 14 F.3d 787 (2d Cir. 1994) (noting that *pro se* submissions should be construed "to raise the strongest arguments that they suggest").

With respect to Camacho's first point, while there is evidence that Camacho reported suffering from migraines, there is also evidence to the contrary. Most notably, Policar, Camacho's treating physician, made no such diagnosis and, indeed, concluded that "he has no physical impairment that would keep him from working." A.R. at 152. Under the Commissioner's "treating physician rule," "the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw v. Carter*, 221 F.3d 126, 134 (2d Cir. 2000) (citing 20 C.F.R. § 416.927(d)(2)). Thus, the ALJ correctly deferred to Policar's determination that Camacho's only medical condition was his asymptomatic HIV infection.

With respect to Camacho's second and third points, the Administrative Record contains no evidence that Camacho's HIV infection is worsening or that he has developed an allergic reaction; rather, Camacho appears to be presenting new evidence of those problems. While the Social Security Act authorizes a district court to remand for consideration of new evidence, *see* 42 U.S.C. § 405(g), such a remand requires the claimant to demonstrate, *inter alia*, that the evidence is "material, that is, both relevant to the claimant's condition *during the time period for which benefits were denied* and probative."

---

rejected a cortisone injection for his elbow, *see id.* at 84; (3) that he "declined further psychiatric and mental health services," *id.* at 139; and that he attended high school in Puerto Rico. *See id.* at 157. These facts had no bearing on the ALJ's decision and, therefore, do not constitute grounds for reversal.

7

*Tirado v. Brown*, 842 F.2d 595, 597 (2d Cir. 1988) (emphasis added). The evidence proffered by Camacho, by contrast, relates to conditions that have allegedly arisen since his application for SSI was denied; therefore, remand for consideration of the evidence is not warranted. Camacho is, of course, free to reapply for benefits based on conditions that have developed or worsened since the ALJ rendered his decision. *See, e.g., Velasquez v. Barnhart*, 2004 WL 1752825, at *4 (S.D.N.Y. Aug. 4, 2004) ("If [plaintiff's] condition has indeed worsened since the ALJ issued his opinion . . . , she is encouraged to reapply for benefits."); *Martell v. Apfel*, 2000 WL 567012, at *5 (S.D.N.Y. May 9, 2000) ("If, at some time in the future, plaintiff is able to prove that he has suffered a relapse, he may then reapply for . . . benefits.").

### III.

The Commissioner's motion for judgment on the pleadings is granted and her final decision denying Camacho's application for SSI is affirmed.

**SO ORDERED.**

FREDERIC BLOCK
United States Senior District Judge

Brooklyn, New York
December 6, 2005